THE STATE OF OHIO, APPELLEE, *v.* EUBANK, APPELLANT.

(No. L-85-294—Decided
July 10, 1987.)

*Anthony Pizza,* prosecuting attorney, *Thomas Secor* and *Lawrence Kiroff,* for appellee.

*Alan S. Konop,* for appellant.

RESNICK, J. On June 5, 1987, this court entered judgment, with opinion, on the merits. On June 15, 1987, appellant filed a motion for reconsideration of that judgment. Pursuant to the motion, the judgment, with opinion, heretofore entered on June 5, 1987, is vacated, set aside and held for naught.

This cause is before the court on appeal from the July 25, 1985 decision of the Lucas County Court of Common Pleas, wherein that court entered judgment finding defendant-appellant, James R. Eubank (hereinafter "appellant"), guilty of two counts of involuntary manslaughter in the commission of a felony and two counts of aggravated arson. Appellant filed a timely notice of appeal and asserts the following assignments of error:

"I. The trial court erred in overruling appellant's motion for new trial on the basis of newly discovered evidence, in violation of appellant's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

"II. The trial court erred in overruling appellant's motion for new trial on the basis of the state's failure to disclose evidence in violation of appellant's rights under the Fifth and Fourteenth Amendments to the United States Constitution, and in violation of Rule ·16, Ohio Rules of Criminal Procedure.

"III. The trial court erred in refusing to instruct the jury on the lesser included offense of negligent homicide, in violation of appellant's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

"IV. The trial court erred in refusing to permit defense counsel to cross-examine co-defendant Johnson concerning his prior charge of aggravated arson and conviction of criminal damaging, in violation of the appellant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

"V. The trial court erred in refusing the testimony of Russell Eubank, in violation of appellant's rights under the Fifth and Fourteenth Amendments to the United Staes [*sic*] Constitution.

"VI. Appellant's convictions are improperly based upon the sole testimony of an accomplice, in violation of Ohio Revised Code Section 2923.01(H) and are otherwise against the manifest weight of the evidence."

The charges in this case arose from the January 12, 1985 fire in the home of Phil and Sally Rayburn, located at 518 Oliver Street, Toledo, Ohio. Amanda Rayburn and Elihu Lewis died as a result of the fire.

Appellant was charged with two counts of aggravated arson and two counts of aggravated murder with three death penalty specifications as a result of the fire and deaths. Robert L. Johnson was indicted as a co-defendant on the same charges; however, no death penalty specifications were included. A jury trial commenced on July 9, 1985. Johnson testified against Eubank at the trial in exchange for a promise by the prosecution not to seek the death penalty. Twenty-seven witnesses were presented in the course of the trial.

The testimony presented by Johnson demonstrated that appellant hired

Johnson to prevent Walter Rayburn from testifying against appellant in a pending rape case. Initially, Rayburn was offered cash and an automobile in return for his agreement not to testify against appellant. Rayburn accepted and perjured himself at a deposition, but subsequently told the police that he had lied during the deposition and was willing to testify truthfully. As a result of Rayburn's change of mind, appellant requested that Johnson try numerous other approaches to keep Rayburn from testifying. Initially, Johnson was to lure Rayburn out of town. He was offered trips to Logan, Ohio, and California. Each of these was refused by Rayburn. Douglas Walton, a prosecution witness, also participated in discussions regarding getting Rayburn out of town and was offered the opportunity by appellant to accompany Rayburn on trips to California or Florida.

When Rayburn refused to leave town, appellant devised various schemes to cause Rayburn's death and approached Johnson for the purpose of having Johnson carry them out. One suggestion made by appellant was for Johnson to leave Rayburn somewhere outside to freeze to death. A second plot required Johnson to give Rayburn drugs and alcohol, supplied by appellant and calculated to induce an overdose. Under the third scheme, Johnson was to drown Rayburn in the swimming pool of a hotel. Appellant provided Johnson with money, including the expenses of a hotel room, to carry out his plans. However, none of the schemes was ultimately carried out by Johnson.

Johnson testified that while he accepted appellant's money, he did not intend to kill Rayburn. Rather, he intended to make appellant think that he was going to carry out appellant's plans for as long as possible to enable himself to obtain as much money and alcohol as he could from appellant.

Johnson was arrested on unrelated charges and incarcerated. Prior to Johnson's release from jail, appellant requested that Johnson burn the Rayburn home. Johnson agreed and appellant posted the majority of Johnson's $1,000 bail. Johnson testified that he did set fire to the Rayburn home by using a Bic lighter to ignite a blanket on the back porch. Johnson further testified that he telephoned the Rayburn home in order to warn the residents of the fire, but no one answered.

The day after the fire, appellant contacted Tony Morrissey to request that he provide appellant with an alibi for the time of the fire. Appellant subsequently telephoned Douglas Walton and requested that he contact Tim Hill to have him prepare an alibi.

Based on the testimony presented at trial, the jury found appellant guilty of two counts of the lesser included offense of involuntary manslaughter and two courts of aggravated arson. Appellant filed a notice of appeal to this court on August 13, 1985. Appellant filed a motion for new trial in the trial court on November 14, 1985. The matter was subsequently remanded to the trial court for resolution of the motion for new trial. The basis for the motion for new trial was that appellant discovered that the prosecution had failed to turn over a tape recording which it had in its possession. Appellant filed a supplemental motion for new trial on January 14, 1986. The basis for the supplemental motion was an affidavit of Thomas Martin, an inmate at Marion Correctional Institute, by which he asserted that Johnson admitted lying at the trial concerning appellant's involvement in the fire. Evidentiary hearings were held on both motions and the trial court denied the motions on March 6, 1986.

Appellant filed a third motion for new trial on September 9, 1986. This

motion was supported by affidavits of Larry Beckley, Rick Williams and James Pierce, all inmates at Marion Correctional Institute. A fourth motion for new trial was filed on November 20, 1986, and was supported by the affidavit of Dean Sorady, an inmate at Marion Correctional Institute. Both of these motions for new trial were denied by the trial court in its January 29, 1987 decision.

Appellant asserts in his first assignment of error that the trial court erred in overruling the motions for new trial. Appellant filed four separate motions for new trial based on newly discovered evidence. The newly discovered evidence consisted of the undisclosed tape and the five affidavits of the inmates at Marion Correctional Institute.

It is well-established in Ohio that the granting of a new trial based upon newly discovered evidence is within the discretion of the trial court and the decision should not be disturbed in the absence of a clear showing of abuse. *State* v. *Lane* (1976), 49 Ohio St. 2d 77, 3 O.O. 3d 45, 358 N.E. 2d 1081, at paragraph three of the syllabus, vacated on other grounds (1978), 438 U.S. 911; *State* v. *Williams* (1975) 43 Ohio St. 2d 88, 72 O.O. 2d 49, 330 N.E. 2d 891, at paragraph two of the syllabus; *State* v. *Shepard* (1983), 13 Ohio App. 3d 117, 13 OBR 473, 469 N.E. 2d 1040, at paragraph two of the syllabus; *Cincinnati* v. *Means* (App. 1974), 71 O.O. 2d 285, 286.

The Ohio Supreme Court has set forth six factors to be evaluated in determining whether a new trial is warranted and, thus, whether a trial court abuses its discretion in denying a motion for new trial.

"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. (*State* v. *Lopa,* 96 Ohio St., 410, approved and followed.)" *State* v. *Petro* (1947), 148 Ohio St. 505, 36 O.O. 165, 76 N.E. 2d 370, at the syllabus.

When the factors set out in *Petro, supra,* are applied to the affidavits, it becomes apparent that a new trial was not warranted. The affidavits stated that Johnson was working on his own behalf and that appellant was not involved in the fires. The first factor is not satisfied because there is not a strong probability that the affidavits will change the result of the trial. Substantial evidence, including the testimony of Johnson himself, was presented at trial that would have allowed a jury to conclude that Johnson may have been acting alone. The second, third, and fourth factors are satisfied because the evidence was discovered after the trial, it could not have been discovered prior to the trial and the evidence is material to the issues. The fifth factor is not satisfied because the evidence is merely cumulative and does not add anything to the testimony presented at trial. The sixth factor is not satisfied because the evidence presented in the affidavits could have been used only to impeach Johnson's testimony.

When the evidence presented in the tape is reviewed, it becomes apparent that the trial court did not err in denying the motion for new trial based upon the discovery of the undisclosed tape. The tape consisted of a conversation between Johnson, Phil Rayburn and others. The tape raises the possibility of the involvement of

Douglas Walton in the attempts to prevent Walter Rayburn from testifying at the rape trial. Applying the first factor of *Petro, supra,* the discovery of this tape does not give rise to a strong probability that appellant would have been acquitted at trial if the tape had been made available prior to trial and could have been used to further investigate the case for the defense. Appellant had access to information that Douglas Walton was involved through sources other than the tape. The tape presented no additional evidence to assist appellant in his defense. As with the affidavits, the second, third and fourth factors have been satisfied. However, as indicated above, the evidence presented by the tape is merely cumulative to evidence previously presented during trial. Further, the evidence presented in the tape could be used only for impeachment. Thus, the fifth and sixth factors were not satisfied.

Since application of the *Petro* factors demonstrates that a new trial was not warranted based upon either the affidavits or the tape, the trial court did not err in denying appellant's motions for new trial. Accordingly, appellant's first assignment of error is found not well-taken.

Appellant contends in his second assignment of error that the trial court erred in denying appellant's motion for new trial based upon the prosecution's failure to disclose the tape. Appellant argues that the tape constitutes exculpatory material which *Brady* v. *Maryland* (1963), 373 U.S. 83, requires to be disclosed to a defendant.

The United States Supreme Court recently addressed the issue of the prosecution's failure to disclose requested information in *United States* v. *Bagley* (1985), 473 U.S. 667. The Supreme Court did not adopt an automatic reversal requirement in *Bagley;* rather it adopted the view that

each case must be decided upon its own facts. The *Bagley* decision relied on *United States* v. *Agurs* (1976), 427 U.S. 97, and concluded that the violation of the defendant's right to a fair trial was the key factor.

" 'For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose. * * *

" '* * * But to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.' [*Agurs, supra,* at 108]." *Bagley, supra,* at 675-676.

The *Bagley* court also considered the materiality of the suppressed evidence and stated that:

"* * * [A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Bagley, supra,* at 678.

*Bagley* was not the first time the Supreme Court considered the materiality of undisclosed evidence. In *Agurs, supra,* at 109-110, the Supreme Court stated:

"* * * The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."

The *Bagley* court considered the materiality issue further and adopted the definition of *Strickland* v. *Washington* (1984), 466 U.S. 668:

"* * * The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the pro-

ceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley, supra,* at 682.

Therefore, appellant is entitled to a new trial only if there is a reasonable probability that he would have been acquitted if the evidence had been available prior to trial.

Appellant has not presented sufficient evidence to persuade this court that there is a reasonable probability that he would have been acquitted if the tape had been available to him prior to trial. As stated previously, the evidence included in the tape is merely cumulative to that presented at trial. Anything in the tape that might possibly have assisted appellant in his defense was already presented at trial through other sources.

Appellant also argues that the unavailability of the tape impaired his ability to investigate and prepare his defense. The Supreme Court addressed this issue in *Bagley, supra,* at 682-683:

"We agree that the prosecutor's failure to respond fully to a *Brady* request may impair the adversary process in this manner. * * * This possibility of impairment does not necessitate a different standard of materiality, however, for under the *Strickland* formulation the reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response."

This court, upon review of the evidence in this case, finds that appellant was not adversely affected in the preparation of his defense by the prosecution's failure to provide him with the tape. Appellant was provided with the names of all potential witnesses and was not prevented from using this information to contact the witnesses to gain statements from them. However, the record reveals that almost none of the state's witnesses would talk to appellant's attorney. This circumstance coupled with the fact that only cumulative evidence was presented in the tape leads this court to conclude that if appellant had been given access to the tape prior to trial his investigation would not have resulted in a different outcome at trial. As a result, appellant's second assignment of error is found not well-taken.

Appellant alleges in his third assignment of error that the trial court erred in refusing to instruct the jury on the lesser included offense of negligent homicide. The Ohio Supreme Court has set forth the criteria for determining when an offense is a lesser included offense of another crime. In *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 384, 18 O.O. 3d 528, 530, 415 N.E. 2d 303, 306, the court stated:

"An offense may be a lesser included offense of another only if (i) the offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot be committed without the offense of the lesser degree also being committed and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."

Application of the *Wilkins* criteria to the instant case demonstrates that negligent homicide is not a lesser included offense of aggravated murder. Appellant's argument fails on the second prong of the *Wilkins* test. Negligent homicide and aggravated murder have mutually exclusive elements.

Negligent homicide requires that a person *negligently* cause another's death and aggravated murder requires that a person *purposely* cause another's death. Therefore, the offense of aggravated murder can in fact be committed without the offense of negligent homicide also being committed.

The Supreme Court has also set forth a standard for determining when a defendant is entitled to a charge on a lesser included offense:

"* * * [I]f the trier could *reasonably* find against the state and for the accused upon one or more of the elements of the crime charged and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense, then a charge on the lesser included offense is both warranted and required, not only for the benefit of the state but for the benefit of the accused." (Emphasis *sic.*) *State* v. *Nolton* (1969), 19 Ohio St. 2d 133, 135, 48 O.O. 2d 119, 120, 249 N.E. 2d 797, 799.

See, also, *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 218, 15 OBR 311, 357-358, 473 N.E. 2d 264, 310, certiorari denied (1985), 472 U.S. 1032, rehearing denied (1985), 473 U.S. 927.

Assuming *arguendo* that negligent homicide is a lesser included offense of aggravated murder, appellant would still not be entitled to a charge on negligent homicide. The elements of negligent homicide are (1) negligently causing another's death, (2) by means of a deadly weapon or dangerous ordnance and (3) venue. The elements of aggravated murder are (1) purposely causing another's death, (2) while committing, attempting to commit, fleeing immediately after committing or attempting to commit, (3) kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary or escape and (4) venue. When the elements of these two offenses are considered, it is apparent that even if the trier of fact could find against the state and for appellant upon one or more of the elements of aggravated murder and for the state and against appellant on the remaining elements, the remaining elements would not by themselves sustain a conviction for negligent homicide. Therefore, this court concludes that appellant was not entitled to a charge on negligent homicide.

In addition, other Ohio appellate courts have determined that negligent homicide is not a lesser included offense of murder. *State* v. *Jenkins* (1983), 13 Ohio App. 3d 122, 13 OBR 141, 468 N.E. 2d 387; *State* v. *Grace* (1976), 50 Ohio App. 2d 259, 4 O.O. 3d 223, 362 N.E. 2d 1237. See, also, *Brewer* v. *Overberg* (C.A. 6, 1980), 624 F. 2d 51.

Based on the foregoing discussion, appellant's third assignment of error is found not well-taken.

Appellant asserts in his fourth assignment of error that the trial court erred in refusing to allow appellant to cross-examine Johnson concerning a prior charge and conviction. Appellant attempted to question Johnson regarding a prior charge of aggravated arson which resulted in a conviction of criminal damaging.

Evid. R. 404(B) provides when evidence of other crimes is admissible:

"RULE 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes
"* * *

"(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Appellant argues that he attempted to introduce the prior offense for purposes permitted under Evid. R. 404(B) and not to prove character. This argument must fail. It was not necessary to prove any of the purposes set forth in Evid. R. 404(B) because Johnson admitted that he set the fire. It is apparent that appellant wanted to admit evidence of the prior offense only to prove the bad character of Johnson. Therefore, appellant's fourth assignment of error is found not well-taken.

The fifth assignment of error contends that the trial court erred in refusing to allow Russell Eubank to testify. Appellant avers that Russell Eubank would have testified to receiving a telephone call from Phil Rayburn during which Rayburn attempted to obtain a Dodge van from Eubank.

Evid. R. 801(C) defines "hearsay" as:

"* * * a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Evid. R. 802 provides that hearsay is not admissible unless it falls within one of the enumerated exceptions.

Appellant contends that the testimony of Russell Eubank would not be hearsay because it is not a statement and not offered to prove the truth of the matter asserted. Appellant provides no support for his claim that the testimony of Eubank would not be a "statement." There is no way for this court to determine that the testimony would not have constituted a statement because the exact words were not proffered at trial.

The prosecution argues that the testimony is in fact offered to prove the truth of the matter asserted. The prosecution's position is correct. Russell Eubank's testimony was offered to prove that Phil Rayburn was involved in a scheme to take money from appellant. This was done by showing that Rayburn wanted the van. Therefore, the testimony was offered to prove the truth of the matter asserted, that is, Rayburn wanted a van from Russell Eubank. As a result, appellant's fifth assignment of error is found not well-taken.

Appellant raises two arguments in his sixth assignment of error. First, appellant argues that his convictions were improperly based upon the sole testimony of an accomplice. Second, appellant argues that his convictions were against the manifest weight of the evidence. The first portion of appellant's assignment of error is entirely without merit. The prosecution presented the testimony of twenty-one witnesses in addition to the testimony of Johnson. The testimony of some of these witnesses will be outlined below.

The second portion of appellant's assignment of error is also without merit. Where a challenge is made to the weight of the evidence, a reviewing court will not disturb the findings of the trier of fact where evidence is presented which, " 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *Atkins* v. *State* (1926), 115 Ohio St. 542, 546, 155 N.E. 189, 190, quoted in *State* v. *Walker* (1978), 55 Ohio St. 2d 208, 212, 9 O.O. 3d 152, 153, 378 N.E. 2d 1049, 1051, certiorari denied (1979), 441 U.S. 924.

The Ohio Supreme Court has established the standard for determining whether a criminal case should be reversed on the basis of a verdict being against the manifest weight of the evidence:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

*State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132, at the syllabus.

A review of the evidence presented at trial reveals that sufficient evidence was presented to allow a jury to conclude that all of the elements had been proven beyond a reasonable doubt. Robert Johnson testified to his role as well as appellant's role in the efforts to keep Walter Rayburn from testifying at the rape trial and the resulting deaths and arson. Douglas Walton also testified as to his role and appellant's role in the attempt to prevent Walter Rayburn from testifying. Sharon Beach testified that appellant wanted Johnson out of jail and that he posted Johnson's bail. She further testified that appellant had control over Robert Johnson. Beach also testified that the night prior to the trial appellant stated that the Rayburns were going to be taken care of.

Witnesses also testified that they were contacted by appellant in an effort to obtain an alibi for the night of the fire. Linda Hill testified that appellant stated that the Rayburn home should be burned. Ron Michalak also testified that appellant stated that he was going to pay someone to burn Walter Rayburn's house. Michalak further testified that he had observed numerous transfers of checks from appellant to Johnson. Evidence supporting the witnesses' testimony was also provided through such sources as canceled checks and phone records.

The evidence discussed above as well as the other evidence presented at trial makes it clear that appellant was not convicted on the sole testimony of an accomplice and that his convictions were not against the manifest weight of the evidence. Accordingly, appellant's sixth assignment of error is found not well-taken.

On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. This cause is remanded to said court for execution of judgment. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and CONNORS, J., concur.