JOURNAL ENTRY and OPINION
Defendant-appellant Gary Russell appeals from his convictions after a jury trial for receiving stolen property, viz., a motor vehicle, and failure to comply with the order or signal of a police officer, with a furthermore clause.
Appellant contends the trial court erred in admitting into evidence certain improper hearsay testimony and in sentencing him to a "near maximum" term of incarceration. This court has examined the record, finds the trial court's actions did not constitute reversible error, and therefore affirms appellant's convictions.
Appellant's convictions stem from a series of incidents that began on Friday, July 11, 1997. At that time, appellant was employed in the City of Cleveland Heights by Jim's Towing company, a service for the towing of vehicles. The service, interalia, took possession of vehicles ordered impounded by local city police departments. James McQueen owned the service company located at 2863 Noble Road.
McQueen originally hired appellant in March 1997. Later, McQueen discovered he previously had become acquainted with appellant; McQueen's brother had served with appellant's father in the United States Army. Appellant's duties as McQueen's employee included driving a tow truck and responding to requests to tow a vehicle to the company's impound lot located at the rear of the property.
A seven-foot-high fence with one gated entrance surrounded the impound lot. Security measures at the lot's entrance included a combination lock and motion detector. Only McQueen and the tow truck drivers knew the proper sequence of numbers that disengaged the lock.
The proper procedure for the company's approximately ten tow truck drivers consisted of the following: (1) respond to a company radio dispatch to proceed to the location of the designated vehicle; (2) secure and tow the vehicle to the impound lot; (3) proceed to the gate to disarm the motion detectors and to open the gate; (4) place the towed vehicle in the lot; (5) transport the "paperwork"[1] and any valuables found in the vehicle to the office; (6) notify the office worker of the vehicle's location in the lot; (7) return to the gate to lock it and rearm the motion detectors; and (8) inform the dispatcher they were "clear."
On July 11, 1997 appellant worked the company "shift," which started at 11:00 a.m. Shortly after coming on duty, appellant responded to a call from the Beachwood Police Department to tow a 1985 Oldsmobile Cutlass Supreme from that city to the impound lot. Sometime after appellant had followed the proper procedure for the Cutlass, he approached McQueen with a grievance. McQueen, who was in the process of discussing an important matter with his "banker," was short with appellant. The two men then exchanged "words" before appellant was terminated from his employment. Appellant's co-workers soon learned of this altercation.
The following day, the owner of the Cutlass, Melvin King, came to Jim's Towing to retrieve his vehicle. The vehicle, however, could not be located in the impound lot. King thereafter reported to the police that it had been stolen.
That night, Alphonso Fitzgerald, one of appellant's co-workers, remained at work after his shift ended to socialize with another tow truck driver. The missing vehicle obviously was a topic of discussion among the workers. Fitzgerald eventually decided to return home at approximately 6:00 a.m. on July 13, 1997. Since his friend remained on his "shift," Fitzgerald proposed to drive himself home in the tow truck and his friend could thereafter return to Jim's Towing in the truck. Fitzgerald's friend acquiesced.
As Fitzgerald drove, he determined to act on a suspicion. Fitzgerald knew the address of appellant's home from occasionally "dropping him off" after work. Fitzgerald proceeded on a route during which he would pass the house in which appellant lived, located at 3710 Bainbridge Road in Cleveland Heights.
When Fitzgerald approached appellant's address, he observed the 1985 Cutlass Supreme "in the driveway sitting plain as day * * *." He parked the tow truck on the street, "blocking the driveway," and radioed Jim's Towing "to see if [McQueen] wanted [them] to tow [the Cutlass] out of there." Fitzgerald was told to "hold on" as the police were being summoned.
However, at that moment, Fitzgerald saw appellant exit the house, smile at the two men inside the tow truck, enter the Cutlass, start its engine, then quickly steer the vehicle over the grass of the yard to enter the street. Fitzgerald immediately moved the tow truck in pursuit.
At the intersection of Superior Avenue and Euclid Heights Boulevard, Fitzgerald "pulled up" to a marked police vehicle. He informed the officer, Michelle Garvey, that he and his friend were in pursuit of a car that had been stolen from [the company's] lot." Garvey had seen the vehicle pass her location "at a high rate of speed." She radioed the information to other police units in the area.
Cleveland Heights Detective Lemuel Riase heard the radio dispatch and moved his automobile to intercept the Cutlass. At the intersection of Mayfield Road and Coventry Road, Riase observed the Cutlass make a turn to proceed northbound on Coventry; the tow truck closely followed. Riase activated his lights and siren before pursuing the two vehicles. His police automobile soon was joined by at least two others; the other officers also had activated their lights and sirens.
The driver of the Cutlass, whom Riase could not identify, continued on a complicated course of travel on both major thorough-fares and side streets at speeds up to eighty miles per hour in a effort to evade his pursuers. Eventually, the driver turned onto East 115th Street in East Cleveland; the hood area of the Cutlass by that time "was smoking." The driver exited the Cutlass while it was still in motion and fled. The Cutlass struck a decorative stone border in front of a residence and stopped, and the engine then exploded into flames. Riase's attempt to capture the driver failed.
On September 22, 1997 appellant was indicted by the Cuyahoga County Grand Jury on two counts, viz., Receiving Stolen Property, a 1985 Oldsmobile, R.C. 2913.51; and Failure to Comply With Order or Signal of a Police Officer, R.C. 2921.331, with a furthermore clause stating the operation of the vehicle had caused a substantial risk of serious physical harm to persons or property. Appellant entered pleas of not guilty to the charges.
Appellant's case eventually proceeded to a jury trial. The state presented the testimony of McQueen, Fitzgerald, Riase, Garvey and King and also introduced into evidence photographs of the Cutlass as it had been abandoned at the end of the police chase. Appellant elected to present no evidence.
The jury returned a verdict of guilty as to both counts. The trial court thereupon sentenced appellant to consecutive terms of incarceration of seventeen months on each count.
Appellant has filed a timely appeal of his convictions. The first of appellant's two assignments of error states:
 THE TRIAL COURT ERRED BY ALLOWING THE STATE TO BOLSTER THE THE (SIC) CREDIBILITY OF ITS WITNESSES WITH HEARSAY TESTIMONY. (T. 55).
Appellant argues the trial court improperly admitted testimony by McQueen that did not comport with Evid.R. 802.[2] Appellant contends the testimony was used by the prosecutor both to prove an element of the crime of receiving stolen property and to support the credibility of Fitzgerald's identification of appellant as the perpetrator of the offense. The context in which the testimony occurred renders appellant's argument meritless.
The following exchange occurred between the prosecutor and McQueen on direct examination:
 Q. Okay. Did you come to find out, come to learn anything about what happened to the car?
A. I did.
Q. And what did you learn?
 A. Two of my employees, Cortland May and Alphonso Fitzgerald, was (sic) on the evening of the — the night of the 12th and they went by Gary Russell's residence and spotted the car in his driveway. And they called me on the radio —
 Q. Okay. And you can't tell anything that they said to you, —
A. Okay.
 Q. — but as a result of what they did say to you what did you do?
 A. I called the Cleveland Heights Police Department. We had already made a report of a car being stolen out of the lot or missing out of the lot. We had made it with the city of Cleveland Heights. And I told them that we had spotted the car at that address not far from Noble Road and there was (sic) two drivers that was (sic) there with it. And I gave them the address. And at that time my drivers then called me on the radio and said that they saw the person that was driving the car and described the person to me that was driving it and left the scene and it headed west.
Thereafter, on cross-examination, defense counsel elicited the following testimony:
 Q. All right. You also said, I think, Mr. McQueen, that at some point you received some radio contact from a couple of your other drivers, oh, I guess, it would be the early morning of July the 13th, the Sunday of that weekend?
A. Correct.
 Q. And, again, without getting too detailed as to what they said to you, it's my understanding that they reported back to you with the location of the vehicle they had discovered and other information?
A. They spotted the vehicle and saw the individual driving it.
Q. You then contacted the Cleveland Heights Police?
A. Correct.
Finally, on redirect examination McQueen testified as follows:
 Q. Mr. McQueen, based on the information that you learned from your employees on July 13th of 1997 when you received the radio broadcast that morning, —
A. Um-hum.
 Q. — is there any doubt in your mind that this defendant —
MR. SOUKOP: Objection, your Honor.
THE COURT: Overruled, please continue.
 Q. — that this defendant, Mr. Russell, was in possession of the 1985 Cutlass Supreme?
MR. SOUKOP: Objection, your Honor.
THE COURT: Overruled.
 A. There is no doubt in my mind that the employees saw Gary Russell driving the car that was taken from my impound lot, no doubt.
As the foregoing demonstrates, McQueen never made a "statement," as that word is defined in Evid.R. 801(A) and (C),[3] that his two employees told him appellant was the perpetrator of the crime; rather, he explained what prompted his action in summoning the police to the area. State v. Messer
(1995), 107 Ohio App.3d 51; cf., State v. Eubank (1987), 38 Ohio App.3d 141; State v. Fawn (1983), 12 Ohio App.3d 25.
Moreover, the foregoing also demonstrates defense counsel made no objection to the prosecutor's initial inquiry of McQueen concerning this matter; indeed, on cross-examination, defense counsel proceeded to make further inquiry. Defense counsel thus invited the prosecutor's efforts to clarify McQueen's testimony on redirect examination. State ex rel. Bitter v. Missig (1995),72 Ohio St.3d 249, 254; State v. Nievas (1997), 121 Ohio App.3d 451. Under these circumstances, appellant cannot now complain the trial court improperly overruled his objections to that testimony.
For the foregoing reasons, appellant's first assignment of error is overruled.
Appellant's second assignment of error states:
 THE TRIAL COURT ERRED BY SENTENCING THE APPELLANT TO A NEAR MAXIMUM TERM OF INCARCERATION. (T. 179)
Appellant argues the trial court failed to conduct the proper analysis prior to imposing sentence in this case. Appellant further argues the record does not support the sentences imposed by the trial court. This court disagrees.
R.C. 2953.08(G) does not compel an appellate court to disturb a trial court's decision with regard to a sentence. State v. Assadand Abdelhady (June 11, 1998), Cuyahoga App. Nos. 72648, 72649, unreported. Rather, an appellate court may alter a trial court's felony sentence only if it "clearly and convincingly" finds the sentence to be unsupported in the record, contrary to the exercise of the court's discretion and the guidelines as set forth in R.C. 2929.12 and R.C. 2929.13, or otherwise contrary to law. Id.
In sentencing appellant, the trial court stated as follows:
 Mr. Russell, I have reflected on all the evidence. Both these cases, I believe, are felonies of the fourth degree. And pursuant to Senate Bill 2 there is a presumption in favor of community control sanctions unless certain other factors are present.
 So I have not ordered a presentence investigation report, but let's take a look at this file.
 * * * 1998 you pled guilty to vandalism. You were placed on probation. You violated probation, probation was continued.
 Then another case in 1990, forgery, uttering, receiving stolen property. Okay. You pled guilty in that case and you were sentenced to one year concurrent with your — with another case, 244842, that was theft and food stamp trafficking you were charged with. You pled guilty to trafficking in food stamps and you were sentenced to one year to run concurrent with your other two cases.
 Then in 1993 * * * you pled guilty to forgery and guilty of receiving stolen property. * * *
 On 7-20-94 * * * you pled guilty to, okay, you pled guilty to failure comply (sic) with order or signal of police officer and you also pled guilty to receiving stolen property. [Y]ou were ordered to 18 months on count one, two years on count two to run concurrent.
 Now, again, we have this charge, again, receiving stolen property and failure comply (sic) with order or signal of police officer with a further finding of causing a substantial risk of physical harm to persons and property.
 Based on the prior record, the fact that you have not made probation this Court finds you are not amenable to community control sanctions.
 Accordingly with respect to count one it is the sentence of this Court that you be incarcerated in the Lorain Correctional Institution for a period of 17 months and pay court costs.
 With respect to count two that you be incarcerated in Lorain Correctional Institutional (sic) for a period of 17 months, sentence to run consecutive to the sentence in count one with credit for time served.
R.C. 2929.11(A) states that the overriding purposes of felony sentencing "are to protect the public from future crime by the offender and others and to punish the offender." Thus, the trial court is directed to consider the need for "incapacitating," for "correcting," and for "rehabilitating" the offender when imposing sentence.
Additionally, R.C. 2929.12 states the sentencing court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing * * *."
It must be noted the trial court did not impose the maximum sentence for each crime upon appellant; thus, the procedure set forth in R.C. 2929.19(B)(2)(d) is inapplicable. Moreover, for that same reason, the supreme court's standard of review, as set forth in State v. Edmonson (1999), 86 Ohio St.3d 324, is of limited value.
The trial court in this case stated for the record it was considering the sentencing factors in reaching its decision. It alluded to appellant's lengthy criminal record, which included prior offenses for the same crimes as those committed herein. The trial court further cited the potential for harm involved when appellant decided to flee the police officers, leading them on a high-speed chase through some residential neighborhoods. Finally, the trial court cited appellant's lack of remorse.
The trial court's comments thus indicated it considered any relevant factors as enumerated in R.C. 2929.12(B) and (D) and R.C. 2929.13(B)(1)
The trial court's sentence was supported in the record, in accord with the statutory guidelines and not otherwise contrary to law. This court, therefore, cannot clearly and convincingly find the trial court acted improperly in imposing appellant's sentences. State v. Hawkins (Aug. 19, 1999), Cuyahoga App. No. 74678, unreported; State v. Assad and Abdelhady, supra; cf.,State v. Banks (Nov. 20, 1997), Cuyahoga App. No. 72121, unreported.
Accordingly, appellant's second assignment of error also is overruled.
Appellant's convictions and sentences are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY J., CONCURS
 DIANE KARPINSKI. P.J. CONCURS (See separate Opinion).
 ________________________ KENNETH A. ROCCO, JUDGE
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] Evid.R. 802 states:
RULE 802. Hearsay Rule.
Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.
[3] Evid.R. 801 states in pertinent part:
RULE 801. Definitions.
The following definitions apply under this article:
(A) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.
(B) Declarant. A "declarant" is a person who makes a statement.
(C) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted.