OPINION
{¶ 1} Defendant, Cynthia Pepper, appeals from her conviction and sentence for complicity to commit trafficking in drugs and permitting drug abuse.
 {¶ 2} In December of 2000, Defendant lived at 4510 E. Venetian Way in Moraine with her boyfriend, Johnny Nave, and his family. Police received complaints from residents in the neighborhood that drugs were being sold from that residence. A confidential informant, Terrence Brewer, agreed to make a controlled buy of drugs at 4510 E. Venetian Way. In exchange, Moraine police voided a traffic citation Brewer had been served in July or August of 2000 for driving under suspension.
 {¶ 3} On October 27, 2000, Brewer attempted to make a controlled purchase of drugs from Johnny Nave at 4510 E. Venetian Way, but was unsuccessful. On December 22, 2000, Moraine police fitted Brewer with a transmitter, searched him, and gave him one hundred twenty-five dollars in buy money. At around 3:00 p.m., Sgt. Selby dropped Brewer off at the Family Market, a block or two away from 4510 E. Venetian Way. Officer Spencer monitored Brewer's transmitter and watched while Brewer walked to the residence.
 {¶ 4} Brewer knocked on the door. Johnny Nave answered the door and let Brewer inside. Brewer immediately observed two children inside the house. Brewer asked about purchasing marijuana, but was told by Nave that he didn't have any to sell. Defendant, Cynthia A. Pepper, was in the kitchen. She said something to Nave about Valium. Brewer told Nave he would be interested in purchasing five of those for three dollars per pill. Nave spoke with Defendant Pepper and asked if she was willing to do that. Defendant then went into a bedroom, retrieved a prescription pill bottle in her name, counted our five pills and handed them to Nave. Brewer counted out fifteen dollars and gave it to Nave, who then gave Brewer the pills. Nave handed the buy money to Defendant Pepper. After inquiring about whose the children were, Brewer left the residence.
 {¶ 5} Officer Spencer watched Brewer as he walked back to the Family Market, where Sgt. Selby met him. Brewer gave the pills and the remaining buy money to Sgt. Selby. Laboratory analysis revealed that the pills were Diazepam, commonly called Valium.
 {¶ 6} Defendant was indicted on one count of complicity to commit trafficking in drugs, R.C. 2923.03(A)(2)/2925.03(A), and one count of permitting drug abuse on a premises she occupied, R.C. 2925.13(B), (C)(3). Following a jury trial Defendant was found guilty as charged on both counts. The trial court sentenced Defendant to five years of community control and suspended her driver's license for six months.
 {¶ 7} Defendant timely appealed to this court from her conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 8} "Whether The Trial Court Erred To The Appellant's Detriment When It Entered A Guilty Verdict Against The Manifest Weight Of The Evidence."
 {¶ 9} Defendant argues that the guilty verdicts are against the manifest weight of the evidence because it not only fails to demonstrate that she knowingly aided and abetted Johnny Nave in committing a felony drug offense or knowingly allowed her home to be used for that purpose, but also demonstrates that Defendant was not present when these crimes occurred. We disagree.
 {¶ 10} A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set out in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 11} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 12} Defendant was convicted of complicity to commit trafficking in drugs in violation of R.C. 2923.03(A)(2) and R.C. 2925.03(A)(1), which state:
 {¶ 13} "(A) No person with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 14} "(2) Aid or abet another in committing the offense."
 {¶ 15} "* * *
 {¶ 16} "(A) No person shall knowingly do any of the following:
 {¶ 17} "(1) Sell or offer to sell a controlled substance."
 {¶ 18} Defendant was also convicted of permitting drug abuse in violation of R.C. 2925.13(B), which states:
 {¶ 19} "No person who is the owner, lessee, or occupant, or who has custody, control, or supervision of premises or real estate, including vacant land, shall knowingly permit the premises or real estate, including vacant land, to be used for the commission of a felony drug abuse offense by another person."
 {¶ 20} The confidential informant, Brewer, testified at trial regarding his controlled buy of Valium at 4510 E. Venetian Way on December 22, 2000. Officer Spencer testified that he monitored the transmitter Brewer was wearing during this drug transaction, that he is familiar with the voice of Johnny Nave and Defendant from past experience, and that he heard Defendant's voice along with Nave and Brewer discussing the sale of Valium and how Defendant gets her prescriptions for it.
 {¶ 21} Defendant's alibi, that she was not at home but rather was Christmas shopping when these crimes took place, creates a conflict in the evidence. Defendant also argues that Brewer's testimony is not worthy of belief because he received a deal from police in exchange for his testimony.
 {¶ 22} This case was a credibility contest between Defendant and the informant, Brewer. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson
(August 22, 1997), Montgomery App. No. 16288, we stated:
 {¶ 23} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 24} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 25} The jury heard evidence concerning Brewer's record of prior convictions, his alcohol abuse and other misdeeds, as well as the deal Brewer received from Moraine police in exchange for his participation and testimony in this case. We cannot say that the jury lost its way merely because it chose to believe Brewer rather than Defendant. In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has resulted. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 26} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 27} "Whether Trial Court Erred To Appellant's Detriment By Denying Appellant's Motion For A Mistrial Based On State's Failure To Disclose All Discovery To Appellant In A Timely Manner And State's Failure To Find All Discoverable Evidence."
 {¶ 28} The State has an affirmative duty to provide an accused, prior to trial, any evidence or other materials of which the State is aware that might exculpate the defendant from criminal liability. Bradyv. Maryland (1963), 373 U.S. 83. Additionally, Crim.R. 16(B)(1)(f) requires the trial court, upon the defendant's motion made prior to trial, to order the prosecutor "to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment."
 {¶ 29} Sgt. Selby testified at trial that, prior to the December 22, 2000 controlled buy, several phone conversations between Johnny Nave and the informant Brewer that involved unsuccessful attempts by Brewer to buy drugs from Nave in October 2000 had been tape recorded. Defendant requested a sidebar conference and moved for a mistrial, arguing that those tapes constituted Brady material that the State had not provided to the defense before trial. The prosecutor represented to the trial court that she had been unaware of the existence of that evidence earlier. The trial court found that the tapes were unknown to the State earlier, and therefore the State could not have determined that they were exculpatory or favorable to the Defendant. Though no Brady violation was found, the trial court ordered that the tapes immediately be provided to Defendant.
 {¶ 30} Sgt. Selby also testified that Moraine police had the traffic ticket issued to the informant, Brewer, which had been voided in exchange for his participation and testimony in this case, as well as the memorandum Selby wrote to the chief of police asking that Brewer's ticket be voided. Selby indicated that those materials had never been turned over to the prosecutor. At the conclusion of the State's case-in-chief, Defendant renewed her motion for a mistrial based upon the State's failure to provide the ticket and memorandum to the defense before trial, as Brady material.
 {¶ 31} The trial court overruled Defendant's motion for a mistrial, but likewise ordered this material provided to Defendant immediately. Defendant argued that her ability to present a defense had been hampered by not having this material available to cross-examine Brewer. In response, the court stated that it would allow Defendant to recall Brewer or any other State's witness for additional cross-examination using this new material just provided to Defendant, and that Defendant would be permitted to introduce into evidence the tape of the recorded phone conversations between Brewer and Nave for whatever value that might have in showing that Defendant was not involved in earlier attempts by Brewer to buy drugs from Nave.
 {¶ 32} A trial court's decision whether to grant or deny a motion for mistrial is a matter resting within the trial court's sound discretion, and its decision will not be reversed on appeal absent an abuse of that discretion. State v. Lamar, 95 Ohio St.3d 181,2002-Ohio-2128. An abuse of discretion means more than an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams
(1980), 62 Ohio St.2d 151.
 {¶ 33} Sgt. Selby's testimony made the jury aware of the facts which these disputed articles of evidence, the tapes, the ticket, and the memo, portrayed. While as articles of evidence they offered Defendant some opportunity to exploit them, those articles were nevertheless merely cumulative to the propositions which they could be offered by Defendant to prove. Evidence which is merely cumulative is insufficient to show a Brady violation. State v. Aldridge (1997), 120 Ohio App.3d 122; State v.Eubank (1987), 38 Ohio App.3d 141.
 {¶ 34} Even if materials that might constitute Brady evidence are not disclosed prior to trial, prejudice can be avoided if a defendant is able to use the evidence at trial. State v. Wickline (1990),50 Ohio St.3d 114. The trial court afforded Defendant the opportunity to recall any State's witness, including the informant Brewer, for further cross-examination, using the newly discovered material for impeachment purposes. The court also afforded Defendant the opportunity to offer in evidence the tape of the recorded phone calls between Brewer and Johnny Nave for whatever value they might have in demonstrating that previous attempted drug transactions between Brewer and Nave did not involve Defendant, by implication making it less likely she was involved in the December 2000 incident giving rise to these charges.
 {¶ 35} The record demonstrates that Defendant made a tactical choice not to use this material at trial, opting to forego that opportunity in exchange for the prosecutor's promise not to present rebuttal evidence. Accordingly, Defendant has failed to demonstrate any prejudice resulting from not having this alleged Brady material prior to trial. We see no abuse of discretion on the part of the trial court in overruling Defendant's motion for a mistrial.
 {¶ 36} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 37} "Whether The Trial Court Erred To The Appellant's Detriment By Entering Guilty Findings To Both A Complicity Count For Participating In A Crime And Permitting Drug Abuse Count For The Same Incident."
 {¶ 38} Defendant argues that the trial court erred in convicting and sentencing her for both complicity to commit trafficking in drugs and permitting drug abuse, both based upon the December 22, 2000 incident, because those offenses are allied offenses of similar import per R.C.2941.25. We disagree.
 {¶ 39} R.C. 2941.25 provides:
 {¶ 40} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 41} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 42} In Ohio, R.C. 2941.25 is the basis for determining whether cumulative punishments imposed in a single trial for more than one offense arising out of the same criminal conduct violate the federal and state constitutional provisions against double jeopardy. State v. Rance,85 Ohio St.3d 632, 1999-Ohio-291. The statute manifests the General Assembly's intent to permit cumulative punishments for the same conduct in appropriate cases. Id.
 {¶ 43} A two step test is employed to determine whether two offenses are allied offenses of similar import. First, the statutory elements of the offenses are compared in the abstract. Id. If the elements do not correspond to such a degree that commission of one of the offenses will result in commission of the other, the offenses are of dissimilar import under R.C. 2941.25(B) and the court's inquiry is at an end. Then, multiple convictions and sentences are permitted. Id.
 {¶ 44} Defendant was convicted of complicity to commit trafficking in drugs in violation of R.C. 2923.03(A)(2) and R.C. 2925.03(A)(1):
 {¶ 45} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 46} (2) Aid or abet another in committing the offense."
 {¶ 47} "* * *
 {¶ 48} "(A) No person shall knowingly do any of the following:
 {¶ 49} "(1) Sell or offer to sell a controlled substance."
 {¶ 50} Defendant was also convicted of permitting drug abuse in violation of R.C. 2925.13(B):
 {¶ 51} "(B) No person who is the owner, lessee, or occupant, or who has custody, control or supervision, of premises or real estate, including vacant land, shall knowingly permit the premises or real estate, including vacant land, to be used for the commission of a felony drug abuse offense by another person."
 {¶ 52} A comparison of the elements of these two offenses discloses that permitting drug abuse requires that the perpetrator have a connection to the specific premises where a felony drug abuse offense is committed by another person. The complicity offense has no such premises requirement. On the other hand, the complicity offense requires the perpetrator to knowingly "aid/abet" another person in selling a controlled substance; that is, affirmatively participate in the sale to some degree. Permitting drug abuse lacks that participation requirement. Therefore, it is apparent that commission of one offense does not automatically result in commission of the other. The two offenses are of dissimilar import and Defendant may be convicted and sentenced for both.Rance, supra; R.C. 2941.25(B); State v. Robbins (April 29, 1994), Licking App. No. 93CA30.
 {¶ 53} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 54} "Whether Appellant Received Ineffective Assistance Of Counsel."
 {¶ 55} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court set forth the standard for judging claims of ineffective assistance of trial counsel:
 {¶ 56} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
 {¶ 57} "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 {¶ 58} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Syllabus, 2. Accord: State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 59} Defendant argues that her counsel performed deficiently by failing to hire a voice analysis expert to demonstrate that the female voice heard on the tape of the December 22, 2000 drug transaction was not hers. Defendant cites no authority in support of her claim. Officer Spencer monitored the transmitter worn by the informant Brewer during this controlled drug buy. No police officers witnessed the sale, only the informant. Nevertheless, Officer Spencer was familiar with Defendant's voice from past experience, and he testified that he heard her, along with Brewer and Nave, discuss the sale of Valium and how she obtained the necessary prescriptions. Brewer, of course, was present during the sale and he testified regarding Defendant's participation in that sale.
 {¶ 60} Defense counsel vigorously cross-examined both Brewer and Officer Spencer regarding exactly what, if anything, they heard Defendant say during this incident. Counsel also cross-examined Spencer regarding the accuracy of his claim that it was Defendant's voice he heard, and not someone else. Defense counsel's reliance upon cross-examination of the State's witnesses, coupled with Defendant's alibi evidence, to create doubt about whether Defendant participated in this drug sale does not portray deficient performance. Compare: State v. Madrigal,87 Ohio St.3d 378, 390, 2000-Ohio-448. Moreover, to resolve this ineffectiveness issue in Defendant's favor would require us to engage in speculation because this record does not demonstrate what testimony a voice analysis expert could have provided in this case. That would require proof dehors this record, demonstrating the probable testimony. Such a claim is not appropriately considered on direct appeal. Id. at 391. Neither deficient performance nor resulting prejudice has been shown.
 {¶ 61} Defendant additionally complains that her counsel performed deficiently by failing to raise any issue about allied offenses. As we found in overruling Defendant's third assignment of error, the two offenses in this case are not allied offenses of similar import. They are offenses of dissimilar import. Thus, defense counsel's failure to object or raise that issue does not constitute deficient performance.
 {¶ 62} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and WOLFF, J., concur.