**The STATE of Ohio, Appellee,**

v.

**BUNCH, Appellant.** ▮

[Cite as *State v. Bunch* (1989), 62 Ohio App.3d 801.]

Court of Appeals of Ohio,
Lorain County.

No. 88CA004378.

Decided May 10, 1989.

802

*Gregory A. White*, Prosecuting Attorney, for appellee.

*Frank Janik* and *Steve Martinek*, for appellant.

MAHONEY, Judge.

Appellant Darrell W. Bunch appeals from his conviction for two counts of gross sexual imposition in violation of R.C. 2907.05(A)(3). We reverse and remand for a new trial.

### Facts

On December 23, 1987, Darrell Bunch appeared in Lorain County Domestic Relations Court for a final hearing of an uncontested divorce from Sandra Bunch. At that time and based on a secret indictment which spanned a twenty-one-month period from September 1985 to July 1987, Bunch was arrested for two counts of gross sexual imposition, one count each against his daughter Karen (born October 14, 1981) and stepdaughter Katrina (born May 19, 1979). At trial Karen was age six and one-half and Katrina was nine years old.

Following a competency hearing, the trial court found both children competent to testify. At trial, each girl testified that they had been alone with Bunch in the shower and while both adult and child were naked he had inserted his finger into each girl's vagina and moved it around.

Bunch admitted to partaking in the normal parenting activity of bathing his daughters. He stressed that any touching of the children's genital area was done in the context of washing.

Bunch, his ex-wife, and the girls each testified that the children had had several bouts with pinworms. No medical records were produced to establish that the children had pinworms during the time frame of the indictment but there was evidence that the condition may have occurred during that period.

The state's witnesses included Karen, Katrina, and Sandra. In addition to Bunch, the defense presented or attempted to present nine witnesses. One of the witnesses was Lori Brown, a school psychologist who had, at the mother's request, conducted several counseling sessions with each child. The trial

court sustained the state's objection to Brown's testimony on the grounds that she was a surprise witness.

The jury returned a verdict of guilty to both counts. Bunch assigns six errors in this appeal.

### Assignment of Error IV

"The children were not competent as witnesses and appellant was denied due process both in the manner in which their competency was determined and in the fact they were permitted to testify."

In his fourth assignment of error, Bunch claims that defense counsel, although present, was improperly excluded from participating in the competency hearing and that the trial court denied Bunch the opportunity to cross-examine the children on the issues of motive and bias.

■ The determination of the competency of a child under ten years of age to be a witness is within the sole discretion of the trial court. It will not be disturbed absent a showing of abuse of discretion. *State v. Lee* (1983), 9 Ohio App.3d 282, 9 OBR 497, 459 N.E.2d 910.

■ In determining whether a child under ten is competent to testify, the trial court must voir dire the child outside the presence of the jury and without interruption from counsel. *State v. Wilson* (1952), 156 Ohio St. 525, 46 O.O. 437, 103 N.E.2d 552.

■ The test for determining the competency of a child is twofold:

" * * * The court, in its hearing, must determine: first, that the witness has the intellectual capacity to recount the events accurately, and; second, that the witness understands the necessity of telling the truth. Evid.R. 601(A) * * *." *State v. Lee, supra,* 9 Ohio App.3d at 283, 9 OBR at 498, 459 N.E.2d at 911.

The record of the competency hearing establishes that the children met the *Lee* test. Furthermore, at trial, both the defense and the state questioned each child extensively on her understanding of the truth and her knowledge of her environment. See *Kentucky v. Stincer* (1987), 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631. We believe the record supports a finding that each child had the intellectual capacity to observe, remember and communicate and that both understood the necessity of telling the truth.

■ Bunch's argument that the trial court's refusal to allow his participation in the hearing and to pursue questions as to bias are without merit.

The issues of motive and bias are issues of credibility, not competency, and are to be left to the triers of fact.

Accordingly, we overrule this assignment of error.

### Assignments of Error V and VI

"V. Due process, and the rules of criminal procedure, mandate certain procedural safeguards to insure a fair trial. These were violated by the State with the Court's acquiescence, and approval, in at least the following: Failure to disclose exculpatory evidence; successful argument by the state to exclude relevant, admissible, exculpatory evidence and rebuttal testimony; use of incompetent (due to infancy, and psychological bias) testimony; and, introduction by the state of irrelevant inflammatory testimony and evidence.

"VI. It was improper, unprofessional, and prejudicially impermissible conduct for the prosecutor to:

"A. In discovery and opening statement, to make material assertions knowing he would later fail to prove them;

"B. To argue for the exclusion of a witness on the basis of an untrue claim of surprise;

"C. To fail to provide exculpatory evidence to defense counsel pursuant to discovery procedures."

Within these assignments of error, Bunch has interwoven a plethora of issues. Essentially, he claims that the cumulative effect of the court's approval of the state's trial tactics denied him a fair trial.

We will address the issues as they become relevant to our analysis. We have already addressed Bunch's claim that the children were incompetent to testify. We reiterate that the record fails to support a finding that the trial court abused its discretion in finding the children competent to testify.

■ Bunch also argues that psychological evaluations of the children should have been conducted. It is unclear as to why he claims such evaluations should have been done. If he claims that the evaluations would have assisted the court in making its determination of competency, his argument must fail. Assuming *arguendo* that the defense even had a right to obtain psychologicals of the children or interviews with the children, the argument that a psychological evaluation would have established bias is purely speculative. Further, any psychological data obtained by defense counsel would have been open for rebuttal by witnesses which the state may have chosen to call. Bunch was given ample opportunity to cross-examine the state's witnesses and attempt to establish bias and motive through his own witnesses.

■ Bunch argues that the state introduced inflammatory and irrelevant testimony and evidence. He asserts that the prosecutor's conduct was so egregious that it denied him a fair trial. To support his claim, Bunch directs this court to the state's opening statement, closing argument and cross-examination of Bunch. Bunch failed to object to the state's conduct on opening or closing. We will not address errors which could have been corrected in the proceedings below. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364. Wide latitude is granted to the cross-examiner and we cannot say that the state overstepped its bounds in its rigorous questioning of Bunch.

■ Bunch also objects to the testimony elicited from Karen and Katrina that Bunch would walk around the house without his clothes. Bunch again failed to object to the questions directed to the issue of his nudity at home. Testimony was introduced from Bunch's two sons, his ex-wife, Sandra and himself that he did not walk around naked. The jury was presented with the facts and sought its own answers from the conflicting testimony.

■ Bunch contends that the state also introduced testimony about his harsh methods of punishment to inflame the jury. From our review of the record, we find that it was defense counsel who questioned Katrina about an incident wherein Bunch had allegedly locked his son in a dog cage. Katrina testified that the son was naked and that he was forced to eat dog food. The brother testified that he had been placed in the cage but not that he had to eat dog food. Apparently this discipline strategy employed by Bunch and elicited solely through defense counsel's efforts is the one which Bunch now claims inflamed the jury. Clearly, this argument is without merit.

■ Defense counsel did object to the state's questions to Katrina about seeing a "dirty" movie. The objection was overruled and the testimony was permitted as relevant. Bunch was given the opportunity to cross-examine on the issue and to adduce testimony from other witnesses which established that no other members of his household were aware of such movies being shown to the girls. Although we question the propriety and relevance of this evidence, we cannot say that prejudicial error occurred.

■ Bunch contends that the state was in possession of exculpatory information which it failed to disclose and so compromised his defense. First, Bunch claims that the state failed to tell him of information that Katrina went to a special doctor presumably in response to her claims of urinary discomfort. Bunch argues that if he had known about this doctor, he could have subpoenaed the medical records.

Katrina was the state's first witness. She talked about going to the doctor with her mother and her mother's boyfriend, Steve Browning. Katrina stated that the doctor did not examine her. Defense counsel had ample opportunity to inquire of Katrina as to the events at the doctor's office. Further, when defense counsel questioned the children's mother about the children's medical history with pinworms, no questions were directed to any other medical problems. While we do not condone the state's failure to provide this information to Bunch, we find that the information was speculative at best and cannot say that such failure, standing alone, so prejudiced Bunch that he was denied a fair trial.

Bunch contends that the state was in possession of tape-recorded conversations which would have exculpated him. These were tapes which were made during interviews of Katrina and Karen by two social workers at the Lorain County Children's Services on October 21, 1987, October 30, 1987, and December 11, 1987. Bunch claims that the tapes establish that the children were cajoled and coerced into claiming their father engaged in improper conduct and demonstrate inconsistencies in the children's testimony. Apparently, he argues that the jury should have had the opportunity to hear the tapes.

Following the state's direct examination of Katrina, the trial court recessed so as to provide defense counsel an opportunity to review the tapes. It appears from the record that the trial court, in contravention of Crim.R. 16(B)(1)(g), did not conduct its own in camera inspection of the tapes.

Although the record includes the conclusion of the discussion of the review of the tapes, it is apparent that defense counsel renewed his request for an in camera inspection of the tapes or the opportunity to make a record of the evidence on the tape. The court responded to this request as follows:

" * * * You have heard the tape and you have cross-examined from what I heard. And I'm not going to let it come in as evidence. Deny your motion for proffer * * *. I am not going to let it come in. It is the testimony of the witnesses is the thing the jury wants to hear and make a decision. * * * "

Evidentiary rulings are within the broad discretion of the trial court and will be reversed only upon a showing of an abuse of discretion which amounts to prejudicial error. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 336, 483 N.E.2d 1157, 1164. We find, however, that the trial court erred in failing to conduct its own in camera inspection and determine whether the tapes included evidence which the jury should have heard because of inconsistencies or their contents could reasonably be considered as exculpatory.

We must then determine whether the trial court's error in failing to adhere to Crim.R. 16(B)(1)(g) can be considered harmless. By itself, we cannot say that the evidence was so material that the result of the proceedings would have been different. *State v. Eubank* (1987), 38 Ohio App.3d 141, 145–146, 528 N.E.2d 1294, 1299–1300, citing *United States v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494. However, this was not the only evidence excluded from the jury. We must view the effect of this error in light of the totality of the circumstances.

Bunch also alleges error in the improper exclusion of the testimony of Lori Brown, a certificated school psychologist. Lori Brown was the school psychologist who spoke with the children, upon the mother's request. Each of the state's witnesses testified of their contact with her. Katrina testified that Lori Brown was the first person she told about what her father did to her. Karen testified that she told Lori Brown "some of the things that sometimes I didn't say." After Lori Brown was sworn in as a witness, the state objected to her testimony on the grounds that Lori Brown's testimony would violate the children's privilege of "confidentiality." The jury was excluded and the issue was discussed by the court and counsel.

The trial court initially overruled the state's objection by finding that R.C. 2317.02(G) was inapplicable. However, the state then claimed that Lori Brown was a surprise witness who did not appear on any of the defense witness lists. In the discussion that followed among the state, defense and court, it was clear that the state was aware of Lori Brown, so her appearance was no surprise. The discussion in part was as follows:

"The Court: My understanding, if you have got notification that she was going to be or potentially a witness, then that's a sufficiency.

"Mr. Martinek: Come to think of it, your honor, we found out about her from him. She was listed on his first.

"Mr. Mangan: Right. And you have been objecting ever since to her testifying.

"Mr. Janik: That's right."

Notwithstanding the state's knowledge of Brown the trial court imposed the Crim.R. 16 sanction of excluding Lori Brown's testimony.[1] For purposes of appeal, the trial court permitted Bunch to proffer into the record an affidavit from Lori Brown. In her affidavit, Lori stated that neither girl mentioned any physical or sexual abuse by their father nor expressed any personal fear of

---

1. At one point in the discussion, the state offered to stipulate to the inconsistencies in response to appellant's counsel's statement that they only desired Brown's testimony for impeachment purposes and not as an expert witness.

their father. Brown also averred that she had the impression that Katrina "was passing on the perceptions or observations of someone else (possibly an adult in need of counselling)."

Clearly Lori Brown's testimony as proffered or, even if limited to inconsistencies, was material and relevant. In a child sexual abuse case, the defendant faces an uphill battle. Few persons can overcome their natural proclivity to sympathize with the child witness and find him or her credible. To present a defense, the defendant must have the opportunity to offer the testimony of witnesses who will assist the trier of fact in determining the truth. The imposition of the sanction of excluding Brown's testimony was certainly not the least severe sanction nor consistent with the purpose of the rules of discovery. In *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 5, 511 N.E.2d 1138, 1141–1142, the court stated:

" " * * * We recognize that a state's interest in pretrial discovery may be compelling. Notwithstanding that interest, any infringment on a defendant's constitutional rights caused by the sanction must be afforded great weight. Consequently, a trial court must impose the least drastic sanction possible that is consistent with the state's interest. If a short continuance is feasible and would allow the state sufficient opportunity to minimize any surprise or prejudice caused by the noncompliance with pretrial discovery, such alternative should be imposed. Even citing defense counsel for contempt could be less severe that precluding all of the defendant's testimony. *United States, ex rel. Veal, v. Wolff* (N.D.Ill.1981), 529 F.Supp. 713, at 722. We hold that a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery."

Clearly, the court committed the same error as the trial court in the *Lakewood* case when it failed to consider other sanctions that would not interfere with Bunch's right to present a defense.

■ Because we find error not only in the court's determination that Lori Brown was a surprise witness, but also in the imposition of a disproportionately severe sanction, we must next determine whether this error can be considered harmless. By itself we cannot say that the evidence was so material that it is certain beyond a reasonable doubt that the result of the proceedings would have been different had Brown's testimony been included. *State v. Eubank, op. cit.* Bunch is not entitled to a perfect trial, only a fair one. *State v. Perryman* (1976), 49 Ohio St.2d 14, 19, 3 O.O.3d 8, 11, 358 N.E.2d 1040, 1044–1045. However, the cumulative effect of the trial errors deprived Bunch of a fair trial. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 31

OBR 390, 509 N.E.2d 1256, paragraph two of the syllabus. Accordingly, and insofar as is consistent with this opinion, we sustain the fifth and sixth assignments of error.

### Assignments of Error I, II and III

"I. As set forth more specifically in subsequent issues, these convictions should be reversed because the evidence was insufficient as a matter of law to support and prove appellant's guilt beyond a reasonable doubt.

"II. As successfully advanced in the *Abi–Sarkis* case (March 1988; unreported decision of 8th District Court of Appeals, Cuyahoga County, see appendix) this court is called upon, in the interest of justice, to sit as a 'thirteenth juror' and reverse the conviction as being against the manifest weight of the evidence adduced at trial.

"III. In order to sustain a conviction, of a father, of gross sexual imposition toward his step-daughter (age 7–8), and his daughter (age 4–5), the state must introduce, and the record must reflect, substantial credible evidence that the father touched an erogenous zone of the children ' * * * for the purpose of sexually arousing or gratifying either person' (O.R.C. 2907.01[B] ) beyond a reasonable doubt."

Bunch contends that the evidence was insufficient and his conviction was against the manifest weight of the evidence. He argues that the state failed to prove each element beyond a reasonable doubt.

In considering Bunch's claim for insufficiency of the evidence we must view the evidence and inferences in a light most favorable to the state and determine whether any rational trier of fact could have found each of the essential elements of the crime beyond a reasonable doubt. *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, paragraph two of the syllabus.

In considering the claim that the verdicts were against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, the credibility of the witnesses and determine whether, in resolving conflicts of the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. *Martin, supra,* at paragraph three of the syllabus.

We have reviewed the record and sat as the "thirteenth juror." See *State v. Abi–Sarkis* (1988), 41 Ohio App.3d 333, 535 N.E.2d 745.

To have found Bunch guilty beyond a reasonable doubt of two counts of gross sexual imposition, the state must prove that Bunch had sexual

contact with Katrina and Karen, both children being under thirteen at the time of the offense. "Sexual contact" is defined in R.C. 2907.01 as:

"(B) 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

The children both testified that they had showered with Bunch and he had inserted his finger into their vaginas and moved it around. Both said it hurt and felt like a "bad" touch.

Bunch argues that even if the children perceived his parenting in the context of bathing as a bad touch there is no evidence that he did the acts for the purpose of sexual gratification as evidenced by the judge's statement in a conference with the parties out of the hearing of the jury.

"THE COURT: I don't disagree that the definition of sexual contact does have the term purposely.

"MR. MARTINEK: Not purposely, for purpose of sexual gratification.

"THE COURT: Right, and I heard no indication of that. But I am pointing out to you that that's not an element of the case that you need to prove, that it was done for personal gratification of sexual arousement or something of that sort. Do I make my position clear?

"There is going to be an explanation of purposely, but not as an element of the crime. Just so we know when you're arguing the elements of the crime.

"MR. MANGAN: You are going to put the elements in the charges plus the definition of sexual contact then, your honor?

"THE COURT: Oh, yes. And there is going to be just a referral to how to treat the word purposely as a definition."

In the instructions subsequently given to the jury, the trial court correctly stated the law. The jury could reasonably have inferred that Bunch committed those acts for his sexual gratification. See *State v. Astley* (1987), 36 Ohio App.3d 247, 523 N.E.2d 322.

After considering the evidence in a light most favorable to the prosecution the jury could have found all of the essential elements of the two counts of gross sexual imposition involving Karen and Katrina. Finally after reviewing the entire record, we cannot find the jury lost its way. Accordingly, assignments of error one, two and three are overruled.

## Summary

Based on the foregoing reasons, we overrule assignments of error one, two, three and four. Insofar as is consistent with this opinion, we sustain the fifth and sixth assignments of error. Accordingly, we reverse the verdicts of guilty as to both counts and remand this cause for a new trial.

*Judgment reversed*
*and cause remanded.*

CACIOPPO, P.J., concurs.

BAIRD, J., dissents.

BAIRD, Judge, dissenting.

If the trial court's in camera review of the statement of a witness results in a determination that inconsistencies exist between the testimony and the prior statement, then it must permit defense counsel to use the prior statement in cross-examination as to any such inconsistencies. Crim.R. 16(B)(1)(g). Here the trial court provided the statement to defense counsel and determined that it had in fact been utilized on cross-examination. Under these circumstances, the defense was afforded precisely that remedy which the judge would have been required to offer if an in camera inspection had revealed inconsistencies. Thus, the failure to conduct an in camera inspection is of no moment, as it created no prejudice to the defendant.

As to the testimony of Lori Brown, defense counsel indicated that his purpose for calling Ms. Brown was to establish that the girls had not related to her their complaints about the defendant having engaged in sexual contact. The state's response was an offer to stipulate that Lori Brown would so testify. Though the defendant never did anything to follow up on the proposed stipulation, the offer of it removes the prejudicial effect of whatever error the court may have made in excluding the testimony.

I believe the convictions should be affirmed.