[Cite as *State v. Luciano*, 2011-Ohio-2607.]

STATE OF OHIO      )          IN THE COURT OF APPEALS
                       )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN      )

STATE OF OHIO                      C.A. No.       09CA009632

      Appellee

      v.                                APPEAL FROM JUDGMENT
                                     ENTERED IN THE
ANTHONY LUCIANO                COURT OF COMMON PLEAS
                                     COUNTY OF LORAIN, OHIO
      Appellant                   CASE No.      08CR077307

DECISION AND JOURNAL ENTRY

Dated: May 31, 3011

Per Curiam.

{¶1} Anthony Luciano has appealed from his convictions on two counts of felonious assault. This Court reverses.

I.

{¶2} This case arose out of an incident at Vic's Nightclub in Elyria, Ohio. Luciano, his brother Emanuel, and their girlfriends spent time at the club during the late evening and early morning hours of November 29 and 30, 2008. Patrons of the club enter at street level and ascend a stairway to the door of the club, where they must present identification to verify their ages, submit to a screening (by wand) and pat down for weapons, and pay an entrance fee. After the foursome spent a couple hours at the club, both brothers became involved in a physical altercation with several club security guards in the screening area outside the entrance to the club. One of the security guards received a large cut to his face during the incident.

{¶3}    Luciano was indicted on one count of felonious assault in violation of Section 2903.11(A)(1) of the Ohio Revised Code, a felony of the second degree, and one count of felonious assault in violation of Section 2903.11(A)(2), also a felony of the second degree.  The case was tried to a jury.  The jury found Luciano guilty of both counts.  The trial court sentenced Luciano to eight years in prison on the first count.  It merged the second count into the first as an allied offense of similar import.  Luciano filed a timely appeal, raising three assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY COMMENTING ON THE EVIDENCE IN VIOLATION OF  APPELLANT'S RIGHT TO A FAIR TRIAL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION."

{¶4}    Luciano argues that the trial court improperly summarized a witness's testimony and commented on other evidence, thereby vouching for and bolstering the credibility of the State's witnesses.  This Court agrees.

{¶5}    In determining whether a trial judge's comments in the presence of the jury require reversal, an appellate court's analysis is guided by five factors: "(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." *State v. Wade*, 53 Ohio St. 2d 182, 188 (1978), vacated and remanded on other grounds by 438 U.S. 911 (1978).

{¶6}     The Ohio Supreme Court has written that, "[i]n a jury trial, the credibility of the witness is a question solely within the province of the jury. . . .   Therefore, a defendant in a jury trial has the right to have the jury, and the jury alone, make the determination on that issue.  The trial judge must not encroach upon that right."  *State ex rel. Wise v. Chand*, 21 Ohio St. 2d 113, 119 (1970) (Citation omitted).

{¶7}     Luciano argues that the trial judge committed prejudicial and reversible error in two ways, first, by improperly summarizing and suggesting conclusions to be drawn from Dwayne Seiler's testimony and, second, by improperly commenting on the significance of witnesses' prior statements instead of conducting an in camera inspection as required by Rule 16(B)(1)(g) of the Ohio Rules of Criminal Procedure.

Dwayne Seiler's testimony

{¶8}     Dwayne Seiler is the head of security and assistant manager at Vic's Nightclub. He testified regarding the procedure for admittance to the club, including metal detector screenings and pat downs.  Mr. Seiler testified that he became aware of Luciano's presence in the club after several women complained that he was touching them inappropriately on the dance floor.  Mr. Seiler testified that he began to watch Luciano whenever he was on the dance floor.

{¶9}     Mr. Seiler testified that he happened to be at the entrance door to the club when Luciano and his brother were there after having spent time in the club.  He testified that they were "causing a ruckus" at the entrance because they did not want to resubmit to wand screening.  A physical altercation ensued, during which Jerron Helbig, another security guard, received a large cut on his face.

{¶10}   On cross-examination of Mr. Seiler, defense counsel attempted to elicit testimony that Mr. Seiler never saw Luciano exit the club.  Luciano's theory of his defense, as presented in

his opening statement, was that he could not have cut Mr. Helbig with a knife because he was both screened and patted down before entering the club, no weapons were found on his person, he never left the club prior to the incident, and he was attempting to leave the club for the evening rather than reenter it immediately before the altercation with the security guards.

{¶11} During the cross-examination of Mr. Seiler, the trial judge commented multiple times in front of the jury regarding the conclusion he would reach based on the witness's testimony. On appeal, Luciano only addresses the third such comment the judge made in the presence of the jury. When Mr. Seiler refused to respond with only "yes" or "no" despite defense counsel's repeated attempts to compel him to do so, the trial judge sua sponte interrupted and made the following statements in the presence of the jury:

"Let's – let's stop for just a moment.

"The witness has testified that he saw Mr. Luciano in the bar, because his attention was brought to Mr. Luciano by some customers. From that, you could conclude that at one point Mr. Luciano was in the bar.

"He's also testified that he was present when the security personnel attempted to re-wand Mr. Luciano. I cannot imagine why you would want to re-wand someone that was not outside the door of the bar. The only logical conclusion that you might be able to draw is that at least, to some extent, he must have gone beyond the security personnel in order to come back through.

"Would you agree that that's a logical conclusion?"

{¶12} Defense counsel then asked whether they could "take a break away from the jury and discuss this matter?" The trial judge acknowledged that that was appropriate and he dismissed the jurors after informing them that the court and counsel were going to discuss a legal issue "that the jury doesn't become involved in[.]"

{¶13} Outside the presence of the jury, defense counsel formally objected to the trial court's making "logical conclusions in front of the jury as to what the witness testified about, mainly that [Luciano] must have exited." Instead of addressing the merits of the objection, the

trial judge inquired whether there was any other way to interpret the witness's testimony. Defense counsel again objected to the judge's "summing up" the witness's testimony in front of the jury. Defense counsel asserted that he hoped to demonstrate that the witness was lying to protect someone but declined to go into detail about his theory of the defense because the court had not dismissed the witness from the stand and he feared that the witness would share the theory of the defense with others. Again, instead of addressing the merits of the objection, the trial judge attempted to instruct defense counsel how to elicit testimony on cross-examination to make his intended point.

{¶14} The trial judge's suggestion that "[t]he only logical conclusion" to be drawn from Mr. Seiler's testimony served to bolster Mr. Seiler's credibility under circumstances in which the jury had been apprised that Luciano's theory of his defense was that he could not have cut Mr. Helbig because he had no opportunity to retrieve a knife, having earlier successfully passed through security screening and having never left the club. The judge's comment indicated that he accepted as true Mr. Seiler's assertion that Luciano was complaining about the need to resubmit to a security screening and that the only logical conclusion to be drawn from the evidence was that Luciano had left the club. Assuming that factual premise, the judge concluded that another security guard, who had not testified at that point, was in fact attempting to rescreen Luciano only because he had left the building and was attempting to reenter.

{¶15} Luciano argues that the trial judge's comments and reasonable inferences arising therefrom prejudiced his right to a fair trial, thereby requiring reversal of his convictions. Luciano maintains the burden of proof to demonstrate prejudice. *Wade*, 53 Ohio St. 2d at 188.

{¶16} Luciano must further overcome the presumption recognized in the second *Wade* factor that the trial judge will recognize when he has breached his duty to refrain from making

comments which may influence the jury and what type of corrective measures are, therefore, warranted. Id. In this case we recognize that the impetus of the judge's commentary was his desire to assist counsel in effectively proceeding with his cross-examination. Ultimately, the trial judge indicated that he realized that his on-going discussion with defense counsel was not appropriate for the jury to hear when he dismissed the jury to continue the conversation with counsel. The judge failed, however, to give a curative instruction by which he might have directed the jury to disregard his summation of the evidence and conclusory commentary. Although the judge later instructed the jury immediately prior to their deliberation to disregard "anything that you consider an indication of the court's view of the facts," the judge limited that instruction to his facial expressions. The trial judge instructed:

> "What that means, ladies and gentlemen, is if at any time during the trial you saw me scowl, which is my natural expression, or smile, it really doesn't mean anything, because I'm not aware of what expressions I might carry on my face. They may not necessarily reflect the way I'm receiving the testimony. So if you saw me do anything which indicated to you my view of the testimony or any of the evidence, disregard it. It is up to you to decide the facts."

{¶17} Here, although the trial judge may have recognized the impropriety of discussing purely legal issues in the presence of the jury, he did not recognize the impropriety of interjecting his conclusions based on the evidence and he offered no curative instruction in that regard. The presumption enunciated in the second *Wade* factor is, therefore, overcome by the trial judge's oversight in this regard.

{¶18} The third factor in *Wade* also supports Luciano's assertion of prejudice. The trial judge sua sponte, and in the presence of the jury, interjected his thoughts as to "[t]he only logical conclusion" to be drawn from Mr. Seiler's testimony. There was no pending objection by the State requiring the judge's oral participation in the proceedings. The judge did not merely caution defense counsel to refrain from badgering or argumentative behavior in the interest of

maintaining decorum in the court. Rather, the trial judge engaged in commentary properly reserved for closing argument by opposing counsel. The circumstances of the judge's unsolicited comments, therefore, prejudiced Luciano's right to a fair trial.

{¶19} In considering the fourth factor, the judge's summation of Mr. Seiler's testimony and his conclusory commentary likely had a considerable effect upon the jury. The jurors were permitted to take notes for use during their deliberation. The judge presented them with a summation of Mr. Seiler's testimony, as well as "[t]he only logical conclusion" to be drawn from that testimony. That conclusion eroded Luciano's theory of his defense, instead substantiating the State's case by concluding that Luciano had the means and opportunity to obtain a knife outside the club. The trial judge gave no curative instruction by which he might have instructed the jury to disregard his comments regarding the conclusions which could (or must) be drawn from the evidence. While there is a long-standing presumption that a jury follows the trial court's instructions, *State v. Jones*, 91 Ohio St. 3d 335, 344 (2001), citing *State v. Raglin*, 83 Ohio St. 3d 253, 264 (1998), here, the trial court failed to issue a curative instruction.

{¶20} Finally, a consideration of the fifth factor in *Wade* demonstrates the prejudicial effect of the trial judge's summation of evidence and commentary. A judge, commonly understood to be a neutral force in trial proceedings, who assumes an adversarial role effectively diminishes counsel's efforts before the jury. The trial judge in this case rendered conclusions during defense counsel's cross-examination of Mr. Seiler which diminished defense counsel's ability to support Luciano's theory of his defense. By the time defense counsel was able to present witnesses who would testify that no one in Luciano's group left the club prior to the incident, the jury had already been directed by the trial judge as to "[t]he only logical

conclusion" on that matter. Accordingly, it was possible that the judge's conclusory comments impaired the effectiveness of defense counsel.

{¶21} The State argues that the trial judge's comments regarding the conclusions to be drawn from Mr. Seiler's testimony were not prejudicial because (1) the judge was merely attempting to illustrate how defense counsel was not making his intended point due to his method of questioning, (2) all the other security guards subsequently testified that they too saw Luciano attempting to reenter the club, (3) the jury remained free to accept or reject any witness's testimony and assess the witness's credibility, and (4) the trial judge's espoused conclusions were in fact logical. This Court disagrees and concludes that Luciano has met his burden to demonstrate prejudice.

{¶22} The State's first argument further supports a conclusion that the trial judge's comments possibly impaired defense counsel's effectiveness by leading the jury to believe that defense counsel did not understand how to properly render a defense for his client. The second argument implies that the impropriety of a judge's prejudicial comments can be cured as long as other evidence subsequently supports the same conclusion. This argument ignores the fact that the judge's conclusions were based solely on Mr. Seiler's testimony and that they served to bolster Mr. Seiler's testimony. The ramifications of the improper bolstering of Mr. Seiler's credibility might ultimately have been the bolstering of the credibility of subsequent witnesses who similarly testified. The State's third argument would have merit had the trial judge instructed the jury to disregard his espoused summations of the evidence and conclusions drawn therefrom. The judge, however, failed to so instruct the jury. The fourth argument disregards the jury's role in assessing the credibility of the witnesses, a role abrogated by the trial judge when he espoused a conclusion premised on Mr. Seiler's testimony accepted as the truth.

{¶23} The United States Supreme Court wrote in *Starr v. United States*, 153 U.S. 614, 625 (1894), that the trial judge "should take care to separate the law from the facts, and to leave the latter, in unequivocal terms, to the judgment of the jury, as their true and peculiar province. As the jurors are the triers of facts, expressions of opinion by the court should be so guarded as to leave the jury free in the exercise of their own judgments. They should be made distinctly to understand that the instruction is not given as to a point of law by which they are to be governed, but as a mere opinion as to the facts, to which they should give no more weight than it was entitled to." (Internal citations omitted.) Here, the judge's comments, both substantively and contextually, would not have caused the jurors to understand that the judge was merely expressing his opinion as to the facts. Rather, the judge's unguarded comments were presented as conclusions of law based on the court's summation of the testimony, resulting in the judge's prejudicial usurpation of the jury's role as the trier of fact. Luciano's first assignment of error as premised on the trial judge's commenting on Mr. Seiler's testimony is well taken.

Prior statements of witnesses

{¶24} Luciano argues that the trial court committed plain error when it explained to the jury the significance of defense counsel's motion pursuant to Criminal Rule 16(B)(1)(g). Specifically, Luciano argues that the trial court erred by failing to conduct an in camera inspection of the witnesses' prior statements, instead informing the jury that defense counsel had the right to review the statements to determine the existence of inconsistencies and that he would not be permitted to use the prior statements in the absence of inconsistencies. Luciano argues that the trial court's explanation to the jury constituted improper commentary which bolstered the credibility of the State's witnesses.

**{¶25}** Luciano failed to object to the trial court's explanation to the jury. This Court has held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention[]" at a time when the trial court might have corrected the error. *State v. Dent*, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶6. "[F]orfeiture is a failure to preserve an objection[.] *** [A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B)." (Internal citations omitted.) *State v. Payne*, 114 Ohio St. 3d 502, 2007-Ohio-4642, at ¶23. Under Criminal Rule 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App. 3d 758, 767 (1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless Luciano has established that the outcome of the trial clearly would have been different but for the alleged error. *State v. Kobelka*, 2001 WL 1379440, 9th Dist. No. 01CA007808 (Nov. 7, 2001) (citing *State v. Waddell*, 75 Ohio St. 3d 163, 166 (1996)).

**{¶26}** Criminal Rule 16(B)(1), as it was in effect at the time of trial, addressed the disclosure of certain categories of evidence by the prosecuting attorney. Rule 16(B)(1)(g) allowed a defendant to move for an in camera inspection of a State's witness's written statement during which the trial court, with the participation of counsel, would determine whether any inconsistencies existed between the witness's written statement and his testimony. The rule allowed defense counsel to use the witness's written statement during cross-examination only if the trial court found inconsistencies.

{¶27} It is well established that an in camera inspection is mandatory upon the defendant's motion. *State v. Morgan*, 1993 WL 119808, 12th Dist. No. 92-02-021 (Apr. 19, 1993) (citing *State v. Wilson*, 23 Ohio App. 3d 111, 114 (1985) and *State v. Ellis*, 46 Ohio App. 2d 102, 105 (1975)); see, also, *State v. Bunch*, 62 Ohio App. 3d 801, 805 (1989). In this case, the trial court did not conduct an in camera inspection of any of the prior statements of the State's witnesses notwithstanding Luciano's repeated Rule 16(B)(1)(g) motions. Instead, without allowing defense counsel to fully enunciate his initial request at the conclusion of the direct examination of the State's first witness, the trial court interrupted and established the following procedure:

"[DEFENSE COUNSEL]: Yes, Your Honor. I'd like to make a –

"THE COURT: You want a 16(B)(1)(g)?

"[DEFENSE COUNSEL]: Yes. And [the assistant prosecutor] has given me this, but I need to review it in light of the testimony as I just heard it, and I'll approach with regard to the rule.

"THE COURT: All right. Ladies and gentlemen, what is occurring now is a witness has just testified. Before [defense counsel] cross-examines him, he has the right to look at any prior statement that this witness has made. He's going to take that opportunity and review that statement now.

"If he finds inconsistencies in the statement, or he learns something from the statement that would be relevant to your consideration, then he is permitted to use the statement in cross-examination. If he doesn't so find anything, then he's not permitted to use the statement. But it does take a few minutes to rule on these types of things, and then we would be on into cross-examination."

{¶28} Rule 16(B)(1)(g) clearly requires that the matter of determining inconsistencies in a witness's prior statement is to take place in camera, outside the presence of the jury. If the trial court, with the presence and participation of counsel, determines that there are no inconsistencies, then defense counsel may not cross-examine or comment on the prior statement. If the trial court determines that inconsistencies exist, then defense counsel is entitled to receive

12

the statement for use during cross-examination as to the consistencies. The rule shields from the jury the knowledge that a witness has made a prior statement for purposes of the State's investigation unless that statement is inconsistent with the witness's sworn testimony.

{¶29} Luciano's argument is well taken. The trial court's instruction to the jury (that defense counsel was reviewing the prior statements of multiple witnesses and that he could use them during cross-examination only if they contained inconsistencies) was an improper comment on the nature and value of the State's evidence. To inform the jury that the witness has made a prior statement to the police regarding the incident implies that the witness is a good citizen who has cooperated with the police. To inform the jury that defense counsel may only cross-examine a witness regarding inconsistent prior statements bolsters the credibility of a witness whose prior statement, the existence of which is now known to the jury, is not referenced by defense counsel. As discussed above, the trial court's statements implicating the credibility of witnesses prejudiced Luciano's right to a fair trial.

{¶30} The State argues that any error was harmless because "the trial court gave the jury an accurate description of the legal process." This Court disagrees. The trial court's misconstruction of the plain language of Criminal Rule 16(B)(1)(g) is apparent on its face. That misconstruction prejudiced Luciano's right to a fair trial.

{¶31} The State argues that Luciano invited the error. Defense counsel, however, merely invoked Rule 16(B)(1)(g). It was the trial court who, unsolicited, instructed the jury as to the erroneous procedure it would apply.

{¶32} For the reasons articulated above, this Court concludes that the trial court committed plain error by establishing an improper procedure to address Luciano's Rule 16(B)(1)(g) motions and by informing the jury of the significance of the rule. The effect was to

bolster the credibility of the State's witnesses who the jury knew had made prior consistent statements during the State's investigation. In this case, there was no dispute that Luciano passed through a security (wand) screening and pat down before he entered the club and that there was no indication that he possessed any weapons at that time. The State's theory of the case was that Luciano left the club, obtained a knife, and attempted to reenter the club. The State presented the testimony of four witnesses who testified that they saw Luciano arguing with a security guard about the need for rescreening before reentering the club. Luciano presented the testimony of three witnesses who testified that the foursome was attempting to pass another patron and leave the club for the first time at the time of the incident. Because the State proposed that Luciano cut the victim's face with a knife he retrieved from outside the club, the case hinged on the issue of the credibility of the witnesses regarding Luciano's purpose at the entrance to the club. When the trial court improperly instructed the jury regarding the Criminal Rule 16(B)(1)(g) procedures and purpose, it implicitly bolstered the credibility of the State's witnesses, usurping the role of the jury, and depriving Luciano of a fair trial.

{¶33} Luciano's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

"THE PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT IN VIOLATION OF APPELLANT'S RIGHT TO A FAIR TRIAL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION."

## ASSIGNMENT OF ERROR III

"THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶34} Luciano argues that his convictions must be reversed because the assistant prosecutor elicited irrelevant and prejudicial evidence regarding a pending warrant for the arrest

of a witness for the defense and because his convictions are against the manifest weight of the evidence. Because this Court's resolution of Luciano's first assignment of error is dispositive, we decline to address his remaining assignments of error as they have been rendered moot. See Rule 12(A)(1)(c) of the Ohio Rules of Appellate Procedure.

### III.

**{¶35}** Luciano's first assignment of error is sustained. We decline to address his remaining assignments of error. The judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CLAIR E. DICKINSON
FOR THE COURT

DICKINSON, P. J.
BELFANCE, J.
<u>CONCUR</u>

CARR, J.
<u>DISSENTS, SAYING:</u>

**{¶36}** I respectfully dissent.

**{¶37}** While I agree that the trial court erred by summarizing Mr. Seiler's testimony before the jury, I would conclude that the error was harmless. The trial court instructed the jury to disregard anything it considered to be the court's view of the facts. Because it is presumed that the jury follows the trial court's instructions, *State v. Raglin* (1998), 83 Ohio St.3d 253, 264, I would conclude that Luciano has failed to demonstrate that the trial judge's comments prejudiced him.

**{¶38}** Moreover, I disagree that the trial court's explanation to the jury regarding the significance of Crim.R. 16(B)(1)(g) constitutes plain error. Luciano failed to establish that but for the alleged error the outcome of trial clearly would have been different. See *State v. Kobelka* (Nov. 7, 2001), 9th Dist. No. 01CA007808, citing *State v. Waddell* (1996), 75 Ohio St.3d 163, 166. Luciano presented the testimony of three witnesses who testified that the foursome was leaving the club for the night rather than attempting to reenter it. The jury retained the ability to assess the credibility of these witnesses, as well as the State's witnesses, notwithstanding the trial court's inaccurate explanation of the procedure implicated by Crim.R. 16(B)(1)(g). The trial

court instructed the jury regarding the tests to apply regarding the credibility of witnesses, including, "[t]he appearance of each witness on the stand; the witness's manner of testifying; the reasonableness of the testimony; the opportunity that the witness had to see, hear, and to know the things concerning which he testified; his or her accuracy of memory; frankness, or lack of it; intelligence; interest and bias, if any; together with all of the facts and circumstances surrounding the testimony." The trial court did not instruct the jury to base its determination of a witness' credibility on whether or not the witness made a prior consistent or inconsistent statement. Because the jury remained free to determine the credibility of the witnesses, Luciano has not demonstrated that but for the trial court's error the outcome of the trial would have been different. Luciano's failure to demonstrate how the trial judge's comments prejudiced him, coupled with overwhelming evidence of his guilt, establishes that the trial court did not commit plain error.

{¶39} I would address the second assignment of error and overrule it. I agree that the State improperly commented on an alleged outstanding warrant for Luciano's brother's arrest in regard to his own criminal case which arose out of these underlying facts. The trial court, however, sustained Luciano's objection and instructed the jury no fewer than three times to disregard the comments as irrelevant to the issue of Luciano's guilt or innocence. Again, the presumption arises that the jury will follow the trial court's instructions. *Raglin*, 83 Ohio St.3d at 264. In light of the trial court's multiple curative instructions, I would overrule the second assignment of error.

{¶40} Finally, I would address the third assignment of error and conclude that the conviction was not against the manifest weight of the evidence. Luciano was convicted of felonious assault arising out of an incident at a nightclub during which a security guard suffered

a serious cut to his face during an altercation with Luciano. Multiple security guards from the club testified that they observed Luciano and his brother causing a commotion at the front door. Several witnesses testified that Luciano made comments in Spanish as he was leaving, turned and assumed a fighting stance, reached in his pocket, and swung at the victim, slashing his face. While no guards testified that they saw an actual knife in Luciano's hand, many of them testified that they saw something shiny in his hand before he threw a punch at the victim. The victim testified that he saw a blade sticking out from Luciano's hand before he felt a burn and realized his face had been cut. Two box cutter knives were found in the area of the altercation after the Luciano brothers were escorted out of the building. Although Luciano and his two witnesses testified that their group was leaving the club when the altercation occurred, multiple club security guards testified that Luciano and his brother were at the entrance, arguing with the doorman and refusing to submit to metal detector rescreening and pat downs. There is no dispute that Luciano originally entered the club after passing through a metal detector and pat down and that no weapons were detected on his person at that time. The weight of the evidence supports the conclusion that Luciano left the club at some point, obtained a knife, and was attempting to reenter the club with the knife when he cut the victim's face. Accordingly, I would overrule the third assignment of error.

{¶41} I would affirm the judgment of the Lorain County Court of Common Pleas.

APPEARANCES:

PAUL A. GRIFFIN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BILLIE JO BELCHER, Assistant Prosecuting Attorney, for Appellee.